By the Court.
In the re-hearing in this cause, it is_alleged that the former decision of this court is in *56 part founded on a privity between Meriwether, Shafts non and Daniel, when no privity exists — that sas no pri-vity exists, any appearance .of equity against Daniel, ought not to extend to Meriwether or his assignee, unless coupled with fraud, ¡and no fraud is alleged or proved against M eriwether — that if the obligation assigned •by Daniel to Meriwether had continued to exist, and the ©bligor had. given any new assurances to Meriwether* they would have been obligatory; and that the cancelling ihe old, and giving a new obligation to a new .person* payable at a different time, and for a different subject, is ntronger than assumpsit or assurance, and is binding both ⅛ law and equity, unless fraud had been used in its procurement, and that none was alleged or proved.
■ 1st. As to the privity — The act of assembly concerning the assignment of bonds and other writings, provides* that they shall carry with them into the hands of assignees, all the equity to which they were subject in the hands .of the obligees. The provisions of this act are not more extensive than the principles established in. courts of chancery in England, and Virginia, and in this court. Nor can it be discovered that the former decision of this court in this case, is predicated upon any privity between the parties, other than this act, and those principles have been recognized as arising from the assignment ; for none other is expressed or fairly to be implied.
2ndly. That the equity against Daniel ought not to extend to Meriwether or his assignee, unless coupled with fraud. The act and principles above alluded to* in express words extend this equity to Meriwether, as the assignee of Daniel, also to Shannon, as the assignee of Meriwether. This would not be controverted if the old bond had been assigned and not cancelled, and the new one had never been given. This leads to the consideration whether,
3dly. “ if the obligation assigned by Daniel to Meri-wether had continued to exist, and the obligor had given any new assurances to Meriwether, they would .have been obligatory, and the cancelling the old* and giving a new obligation to a new person, payable at a different time, and for a new subject, is stronger than assumpsit or assurance, and is binding, both in law and equity, un* less fraud had been used in its procurements”
*57 If the obligor hkd induced Meriwether to take an as-aignmentof the obligation, by assuring him of its justness, and promising to pay it, he would have been bound by Ids assurances and promises, notwithstanding any equity which might have been attached to it, and then it would come within the case decided by this court, Short vs. Jackson, Young, and others (a) — also withirt. the princi-pies of the cases Buckner & al. vs. Smith & al. — and Holmes vs. Smock, 1 Wash. 299, 389. As no such assurances or promises exist in this case, it does not come within those principles;
But it is contended that the cancelling the old, and giving the new bond, &c. is stronger than if. the obligor had made assurances and given promises of payment ; that it is a new contract, with a new person, payable at a different time, and for a new subject;
How can this be considered as a new contract ? There has been no new consideration : the obligor, at the request of the assignee, takes up the old, and gives a new bond, Upon the same and no other consideration than what induced him to give the old; The new grew out of the old. If the first was tainted in the hands of Meri-wether, sd must be the second, it being bottomed on the first; for no subsequent ratification can make a contract valid Avhich was bottomed in fraud, the party being ignorant of the fraud, 2 Vez. 283-4.
Nor can Meriwether be considered as a new party; for by the assignment he stood in the shoes of Daniel, and subject to all the equity to which Daniel was subject; Suppose the new hond had beert given to Daniel, and the old one cancelled, would it have been a new contract and with a new party ? Would the obligor’s equity have been lost ? Certainly not; The law considers Meriwether as Daniel. If the doctrine contended for in this case should be admitted as correct, it would open a door to devices, shifts, arid contrivances, to evade the provisions of the act of assembly, and overturn well settled and established principles in equity; An insolvent obligee who had practised a fraud upon an obligor, by assigning the obligation collusivelv, the assignee, by specious pretences of giving longer day for payment, and if, for money, changing- the subject for property, or charig-ing the species of property, where property was payable^ might avail himself of his fraud, however gross;
*58 The case of Duncan vs. Snell (a), has béen relied t>ft in this case. Never were too cases more unlike. Snell had lost a sum of money at gaining with Saunders*— drew an order for the amount in goods, on Duncan, who was a merchant, which was paid — Snell refused to pay Duncan for the goods delivered on this order — he was sued, and a judgment at law was obtained by Duncan, Without any defence being made by Snell; who filed his bill, stating that the order was given for a gaming consideration, without alleging that Duncan was a party to the gaming; and obtained an injunction, which was made perpetual by the inferior court. This court reversed the decree, as it did not appear from the allegations or proofs that Duncan was a party or privy to the gaming ; or that the money was lent or advanced for that purpose : the proofs were to the contrary.
Upon this review of the case, the former decree of this court is to remain unaltered and confirmed.*

 Pr. Dec. 224.

(a) Pr. Dec. 375.

 Seethe comments on this decifioain íheSafe of Morrifon vs. Clay, poft.